We'll hear argument this morning in Case 13-316, Loughrin v. United States. Mr. Russell. Mr. Chief Justice, and may it please the Court, this case presents the question whether, to commit Federal bank fraud, a defendant must intend to defraud a bank, or whether, as the Tenth Circuit held, it's enough that the defendant intended to defraud someone in order to obtain money the victim keeps in a bank account. Applying the Tenth Circuit's interpretation, the government has prosecuted people whose only relationship to a bank is that they tricked a third party into issuing them a perfectly valid check which the defendant then cashed at a bank. Such a broad interpretation of the Federal bank fraud statute threatens to sweep in a garden-variety state law crime of a broad sweep of the sort that this Court has refused to give to Federal criminal statutes absent a clear statement of congressional intent. Ginsburg. But if it's the words Congress used, obtain funds owned or controlled by financial institutions by means of false representation. Well, the problem is there is an ambiguity in subsection 2 about to whom the false representation must be directed. Now, I acknowledge that ordinarily you would construe that silence in favor of breadth, that in favor of breadth, that a false statement to anyone would do. But there are compelling reasons not to give that ambiguity, that interpretation in this case. And one is the breadth that I mentioned. It enabled the government to bring cases like United States v. Rodriguez, where the government prosecuted a bookkeeper who filed false invoices with her employer that led the employer then to issue perfectly valid checks to people who didn't do the work. Well, but the breadth is confined. And given the development of the banking system, it may not seem as significant a limitation today as in years past. But nonetheless, the definition of a financial institution is, in 18 U.S.C. 20, is limited to institutions with a particular Federal nexus, Federal deposit insurance, Federal home loan bank, Small Business Investment Act. It isn't any financial institution, but institutions in which the Federal government has a particular interest. That's true. But nonetheless, for precisely the reason you identified, it covers an awful lot of banks. And if you read the statute of limitations, it covers a lot of banks. Sotomayor, and that's where I'm having difficulty. Why is it illogical to think that a falsehood rendered through a third party that might affect a bank, a false check, as your client was charged with, that that would be the very case Congress would have wanted covered? So that's a question about, I think, whether intent to defraud a bank could be satisfied in a case like this. And I think that the answer to that is possibly it could. So the government, I think, tries to put you to a false choice between saying you either have to accept the Tenth Circuit's interpretation that sweeps-in cases like United States v. Rodriguez, perfectly valid checks, that don't implicate either of the core interests in a bank fraud case, which is protecting the bank from financial harm or protecting the bank from being lied to. You either have to accept that or you have to leave unprosecutable cases like this one. But that's not the case. Alito, how would that work? Would the jury have to be instructed about the UCC and be asked to determine whether the bank or target in this case would be liable for the funds if the bank had honored a forged check? So that gets the other. We have two theories. We have the theory that intent to defraud a bank is required. And under that theory, the UCC doesn't matter. We also argue, though, if you don't require intent to defraud a bank, you ought to act. Alito, why would it not matter? Because under the government – it doesn't matter under the government's view or ours. Under your view, under your view that there has to be an intent to defraud a bank, why would it not matter from who would ultimately be liable for the money, for the amount of the check? Under our view, all that government has to show is that the defendant intended to deceive a bank in order to obtain property that is owned by or in the custody of a bank. So in a bank account. So a traditional altered check case – Scalia, I think on anybody's theory, you have to show that the money's funds, credits, assets, securities or other property was owned by or under the custody or control of a financial institution. Doesn't either side have to prove that? That's correct. So the point of departure is to whom the false statement has to be directed. But the jury has to be instructed that the money's coming out of the bank. That's correct. That's correct. And so that's – to the extent you think the UCC is implicated in that inquiry, that is true under either one. I don't think that it is. I think it's just going to be a question of, you know, whose money are you trying to get and is it in a bank account? Two of the – two of the six checks involved were paid by the drawing bag. Isn't that so? That is correct. And so – but under our principal view, the problem here is that the government – that the jury wasn't instructed that Petitioner had to intend to defraud a bank as opposed to target. And so it doesn't matter whether the checks were cashed or not. And it doesn't even matter under the risk of loss theory, because it only has to be a risk of loss, not an actual loss. But you have a – you have a credible textual argument, but you run into the problem that your interpretation makes section – subsection 1 surplusage. How do you get around that? I don't know that we do, but the Tenth Circuit's interpretation doesn't either. Because under the Tenth Circuit's interpretation, 1 is rendered surplusage, because any prosecution that could be brought under 1 could also be brought under 2. If it's enough under 2 that you intend to defraud someone, it's surely enough that you intend to defraud a bank. Well, under the alternative, there is certainly overlap, but 2, it reaches a much broader category, or it reaches a broader category, so it's not useless. No, that's true. And representation doesn't have to be made to the bank under 2. 2 covers those instances where the representation is made to somebody else. 1 would be limited to those, perhaps, in which the representation is made to the bank. But under your interpretation, where 2 requires that the representation be made to the bank, there is no point in having two subsections. You might as well just have one. Well, I have two things to say to that. One is Congress may have thought that what they were doing in 2 is making clear that the statute encompasses the broad range of particular kinds of property interests that are unique or at least common in the banking context. And in that way, it serves the same function as the second clause in the mail fraud statute upon which this statute is pressed. It doesn't have the two subparts. But here you are essentially asking us to read the word or, 1 or 2, to mean 1 including 2. Well, that's the same way that this Court has repeatedly read the two parallel clauses of the bank fraud statute, the only difference being, you know, the difference in hard returns and numerals. But I don't think that's the case. Sotomayor This Court did after or before this statute no, this statute was passed before the court's interpretation of the mail fraud statute. Every court that had looked at it at the time the statute was passed had determined that there were two separate provisions. So what why would Congress have any reason to believe they were passing a singular case, a singular charge? I think what Congress would have intended is simply that when it uses the identical materially identical language and structure in two statutes that they would have the same meaning as determined by this Court. The interpretive principle that the government relies on, that identically worded statutes can mean very different things depending on the state of the circuit law, at the time Congress copies the language, is really untenable. And it requires a criminal defendant, for example, to know what that circuit precedent was and not be able to simply rely on this Court's decisions interpreting the identical language in another statute. Ginsburg But it's not identical because in the bank fraud statute, Congress broke out and separately numbered one and two, and it didn't do that in the mail fraud statute. Phillips I understand that, but I don't think that if Congress intended this statute to operate dramatically different from the mail fraud statute, the only change it would have made was those sort of typographical changes. I don't think that's the way Congress conveys that kind of intent. But again, even if you think that subsection 2 creates an independent offense, it's susceptible of the interpretation that we give you, which avoids having to federalize the kinds of cases that are at issue in United States v. Rodriguez. Kagan One understanding of what led to this statute is this Court's decision in Mays, which actually seems on all fours with this case, right, use of a fraudulent credit card to a merchant who then asks for money from the bank. Essentially the same case as this, with a fraudulent credit card as opposed to a fraudulent check. So if we understand this statute as arising from Congress's desire to make that bank a fraud, why should we rule for you here? Phillips I guess I'll have to just dispute the premise. I think Congress was reacting to the rule, the principle of law that Mays adopted, which made it impossible to use the wire fraud statute, the mail fraud statute, to prosecute a case even when somebody goes into a bank and cashes a counterfeit check, because the then use of the mail to settle the account afterwards wasn't good enough. And that's what Congress was concerned with. In this Court's own decision in Mays, the Court noted that Congress had dealt with the specific factual problem in Mays through an amendment, then recent amendment to the Truth in Lending Act, which prohibited credit card fraud. Congress added to those remedies in another section of the same statute that enacted the bank fraud statute and then dealt with the parallel problem with respect to altered checks in Section 513, which is also part of that same statute, which criminalizes any use of an altered check to deceive anyone without regard to whose property the defendant is intending to obtain. So when you're worried about altered check cases here, and we need to not just be worried about those cases because this decision will implicate a whole host of other cases, but if you're thinking just about altered check cases, Congress dealt with altered check cases in Section 513. And that's important because the penalties under 513 and 31 in the bank fraud provision are very different. It's a 30-year sentence for bank fraud and a 10-year sentence for Section 513. And more importantly, the bank fraud statute is a predicate for aggravated identity theft, which imposes a mandatory 2-year minimum sentence that must be served consecutive to any other sentence. And so in a petty case like this, the difference between somebody being charged for the bank fraud and being charged under 513 for a first-time offender can be the difference between 0 to 6 months and 2 to 2-1⁄2 years, and that gives the government enormous plea bargaining leverage. So you can understand why the government wants a broad interpretation here, but it's also equally understandable that Congress would have thought that cases in which somebody's using an altered check in a way that negligently or knowingly poses some risk to a bank warrants less punishment than when somebody directly targets the bank itself for deception in order to obtain bank property. Kennedy. Why is that? Why would Congress have wanted to make that difference? Well, because I think Congress would have been able to do that. And I agree with you that the disparity in punishment is quite substantial. I think that Congress would have thought it's more serious for somebody to target a bank than it is for somebody to use an altered check that has a risk to a bank, because as this case illustrates, using an altered check doesn't necessarily impose a financial cost on the bank. Here, a target intercepted most — we have a disagreement with the government whether it was three or four of the checks, but — and the bank itself may discover the alteration and refuse to honor the check. But when you are intending to defraud the bank, that's — Congress could think that's a much more serious thing. And I do think that, you know, it's — Kennedy, it does seem to me that this case can be distinguished from the example you gave in your yellow brief of the person that sells a magazine subscription and he gets the check, and he never intends to deliver the magazines. In that case, the bank will honor the check, I assume. Yes. And must — and must do so. That's correct. And so — And that's quite different than this case. So the question is how to get rid of those cases while preserving the government's ability to prosecute. Well, you can do so, I suppose, through the government's proposed fallback position at page 40 of its brief, which talks about a risk of loss. So there are — there are several things wrong with the government's fallback position. And it leads, in most cases, to the same result as intent to defraud. So in paradigmatic bank fraud cases, both our rule and their fallback rule permits prosecution. The only real difference is that their rule is designed to permit prosecution in third party check fraud cases like ours, because if it's an altered check that's presented to the bank, we acknowledge that shows intent to defraud the bank. So we're only talking about cases like ours where an altered check is presented to a third party. And the government's rule permits them to continue to prosecute those cases. Now, even if you agree with them that those kinds of cases fall within the scope of the statute, that — all you need to do then is to say, look, those cases aren't materially different than when you submit the check to the bank in the first place, that the altered check shows intent to defraud the bank in third party cases just like it does in a first party case. Now, we think that they're wrong about whether or not these kinds of cases are covered. And if we're right about that, then there's obviously no reason to adopt, you know, a rule that they made up just to deal with those kinds of cases. And maybe I could turn to that argument just for a second. Alito, could I ask you this question? Suppose the defendant testifies and suppose the jury believes the defendant. The defendant testifies as follows. I never intended to defraud the bank. I knew that the cashiers at this particular retail establishment were incredibly careful — careless. And so I got these checks and they were made out to my neighbor, John Doe. I stole them from his mailbox. I crossed out his name. I wrote in the name of the retail establishment. And I knew these cashiers were so careless that they would honor the check. However, I never thought any bank would do that. So I didn't intend to defraud the bank. I intended to defraud the retail establishment. Now, under your theory, that if the jury believed that, the person would not be guilty of the offense. That's right. And I don't think that those cases are covered for an additional reason as well, and that is the fraud there is not intended to obtain bank property. Under subsection 2, it's not any fraud that implicates bank property. The object of the fraud must be to obtain a property that is owned by or in the custody or control of the bank. And in a case like this, what my client obtained was DVD players and groceries and a printer. And those were not property owned by or in the custody or control of the bank. Well, why doesn't that principle cover most of the cases you're worried about? Well, it doesn't cover the cases like Rodriguez, because the government can argue there that so I don't know if I finished the description of Rodriguez, but in that case, a bookkeeper submitted false invoices to her employer, the employer issued valid checks to a third party who then cashed it. And the government can say in a case like that, cashing the check results in you obtaining money in the custody or control of the bank. That's what you get in exchange for the check. And you obtained it by means of a false statement to someone, i.e., the false invoice submitted to the employer. And so it doesn't, adopting our view of what bank property is, doesn't completely eliminate the problem. It would, we would win the case, but it doesn't. Why wouldn't your view have enabled you to win this case? It would, it should have. I mean, we've brought a sufficiency of the evidence challenge with respect to whether  And the jury, you know, the jury would be able to decide. If you think that was wrong, there's a lot less to this case than meets the eye. There is. That could be the end of this case. It doesn't resolve the circuit conflict, which there's still a circuit conflict about whether intended fraud at bank is required in cases not involving this circumstance of a third party. But we do think that you shouldn't believe that just because, if you agree with the government that third party altered check cases fall within the scope of the statute, that's not a reason to forego requiring the government to prove intent to defraud the bank. It's just a reason to say that, as a number of circuits have, that use of that altered check shows intent to defraud a bank. The government has been able to prosecute altered check cases, including altered third party check, altered check cases to third parties, in circuits that require intent to defraud the bank. The other thing that's wrong But what's the theory behind that? Why would presenting an altered check to a third party constitute sufficient evidence of intent to defraud a bank? Well, I think that the theory is that the use of an altered check shows intent to deceive the bank, and then these courts simply view obtaining the property of a third party, using that check as materially identical to obtaining that property directly from a bank, I think is the theory. But usually there won't be evidence, direct evidence, of the defendant's intent. So the defendant's intent will be inferred from objective evidence, will be inferred from other evidence, and then you will get into the question of whether the retailer who initially accepts the check or the bank is ultimately going to be liable for the amount of that check. If you're in a situation in which the retailer is going to be liable, that's maybe that supports the inference that the defendant never intended to defraud the bank. If you're in the situation where the bank is going to be liable, it supports the inference that the defendant intended to defraud the bank. So won't you get into this somewhat complicated UCC question about who is ultimately going to be liable for the amount? I think that's a problem with what you — with your argument, but maybe there's an answer to it. Well, I think that there is, and maybe I'm not explaining it very well. So there's two pieces of intent to defraud the bank. There's intent to deceive the bank and intent thereby to obtain bank property. With respect to intent to deceive the bank, I think the courts have uniformly found in cases, at least first-party cases, that use of an altered check is sufficient evidence to show that you intend to deceive the bank. And when you intend to — whether you intend to deceive the bank, it doesn't matter who's going to end up bearing the cost at the end. It's just a question of — Doesn't that UCC question arise anyway under the requirement that you have to — you have to obtain bank property? It potentially does, if you're willing to — But doesn't that require you to ultimately decide who's going to be stuck with the empty bag? It potentially could if you're willing to say that somebody who obtains property from Target potentially is obtaining bank property because of reasons related to the UCC. We don't think you even need to go that far. We think it's sufficient to say that in these third-party cases, what you're obtaining is the property of somebody else. And that doesn't mean that it's not a crime, and it doesn't even mean that it's not a Federal crime. It simply means it's a Section 513 crime. I understand that, but if you accept the government's view of how these third-party cases ought to — ought to be resolved, you have to get into the UCC, don't you? I don't know. I mean, maybe they can — they're the better people to answer that question for you. But I think that at least — to finish the answer to Justice Alito, use of an altered check which says when you've written, you know, your name on the check rather than the person who altered it is an attempt to deceive a bank. We don't disagree with that. And so then the question in these third-party cases is, are you attempting to obtain property of the bank? And we don't think that the UCC comes into that. It's just a simple common-sense thing that a DVD player on target shelves is not property owned by or in the custody or control of a bank. And so — How does it work — how does it work if you have Mr. Crook? Mr. Crook has a bank account in the Bank of America. He has $32 in it. He writes a check for 5,000. He sees somebody on the street whom he vaguely knows and says, here, take my check. Go to the bank. Give me $200 or give me 1,000. Now, he's got the money from Mr. Smith. He didn't obtain money from the bank. It was Mr. Smith who did or did not go into the bank and get the money. Does that fall within the statute? No. I mean, what that is is a typical bad check case. It's a simple one. This doesn't fall within the statute at all. In fact, in other words, have we got some cases on that? We don't have this Court's case. I mean, this is not good, but I mean, you know, what you tried to do. You didn't get the money from the bank. What you did was just write a false check, knowing that in all likelihood, the guy you give the check to is going to go right to the bank and get the money. I just wonder, is there some authority as to whether that falls within these statutes or not? The government has brought those kinds of not-sufficient-funds cases. Ordinarily, it goes down somewhat differently. It's that you've presented the check that you know is going to bounce to a merchant, not to some guy in the street. And the government's theory is that thereby you're obtaining bank property. But most of the cases say that that's not actually bank fraud because you're not intending to deceive a bank. And that's perfectly fine. Breyer. I don't think you have to, when you say intend, intend can encompass a known but undesired or a consequence of an intentional act. And so you may not care. You couldn't care less whether the money comes from the bank or not, but you know that the bank is likely to pay it. So therefore, you have the requisite intent. But what I'm trying to figure out here is what's the case law on what should be a very common situation? If you give it to a third party, your fake check, insufficient funds, you just want the money from the third party, but you know the bank is likely to honor it. Well, if I can quibble with that last piece of the sentence. Ordinarily, if you get a check that goes to a bank and there's not sufficient funds, they bounce the check. They don't honor it. All right. So try to. That's certainly been my experience. But. All right. Try two different paths here. All right. Path A, he believes that the bank will honor his check when presented by Jones. I've got my names mixed up. Mr. Crook believes that the bank will honor his check when Mr. Smith presents it. And the second is the one Justice Scalia said is being sophisticated about these matters. Mr. Crook believes that the bank will never own, never, never pay the check when presented by Smith. I just want to know the state of the law on those two situations. So the state of the law, and there's only a handful of these not sufficient fund cases, is that most of the circuits have said they do not fall within the statute. The ones that have said that they do, it's usually because the defendant has told some additional lie to the bank. They've opened the account under a false name, for example. And so that's the state of the law. This Court in United States v. Williams, though, said we should go to great lengths. Sotomayor, what is the thinking of those courts? What's that? What's the thinking of those courts? What's the rationale? So the rationale is that in a case where you submit – I guess they have two. Some of them are applying the risk of loss test and say that there's not a sufficient risk of loss. I believe some of them are saying that there's no intent to defraud the bank there because the target of the fraud. And the courts that don't hold this way but hold, as the Court did below, that it's not an intent to deceive anyone so long as the scheme is at arm's length. Yes, but those – I don't know that this case has come up in those circuits, but I think the answer is quite clear that those circuits would say they're covered. But in United States v. Williams, this Court said we should go to great lengths to avoid interpreting a Federal criminal statute to criminalize Federally every insufficient funds check case. Breyer, but with regard to those general statements, you do have language of the statute that favors you, this question. But I guess the theory would simply be where Mr. Crook gives him a bad check to Mr. Smith. He couldn't care less whether Smith presents it to the bank. And he, as far as he's fairly sophisticated, thinks probably Smith won't present it to the bank. He may have an insurance company or something. And therefore, he did not either obtain or try to obtain or believe he would obtain money from the bank. That's right. Whether it's money that the bank itself owns or whether it's money of which the bank has custody. That would seem to be the simplest theory. And I just wonder, is that what courts have said? I think what courts have said is that those kinds of schemes are directed at victimizing the third party, not a bank. And that leaves to the States their traditional authority to prosecute bad check cases, which I don't think should be troublesome. If I could reserve the remainder of my time. Thank you, counsel. Mr. Yang. Mr. Chief Justice, and may it please the Court, Congress drafted Section 1344 with two separate clauses, each of which serves a distinct function. The first clause targets schemes to defraud a bank. That requires intent that the scheme have the purpose of defrauding a bank. Clause 2, and this is at page 5A of the government's brief, you can see the structural difference quite cleanly. Clause 2 targets schemes to obtain property that's either owned by or under the custody or control of a bank. And Congress enacted these broad disjunctive clauses in response to this Court's decision in Mays as well as in Williams, which had curtailed the government's ability to prosecute precisely these types of frauds. But, Mr. Yang, your interpretation of the statute goes far beyond Mays. Mays was something that's a fraudulent credit card or a forged check or something like that. But if I understand your interpretation of the statute, you know, if I sell a painting to somebody and I represent it to be by a famous artist, and in fact, I've just made it in my kitchen, and that person pays me with a check, and it's a perfectly valid check, it's a good check. The fraud is obviously, as to the person who's just bought the painting, it has nothing to do with the bank. But your interpretation would cover that case as well. Yang, that is correct. Our understanding of the text, and the reason why that is the case, is because Congress specified in Clause 2 that the scheme to obtain money or property from the bank has to be by means of a false or fraudulent pretense, but it doesn't specify to whom that false or fraudulent pretense must be made. Now, we understand that that sweeps in broader than what Mays. Kagan. And it's just a little bit peculiar, right? I mean, if somebody pays me in cash, you can't — the government can't prosecute the person. If somebody pulls out a check, the government can. That doesn't seem to make a whole lot of sense in terms of what this statute is about. Well, we think that the text suggests that what Congress was doing was enacting a broad prophylactic, because what Congress was addressing, remember, were situations where this Court had construed narrowly statutes which addressed situations like this where banks were the inherent second-line victims. And so Congress wanted to avoid the fact that the bank is not the victim. That's the whole point in these con artist cases. The bank is incidental. That's exactly right. That's why Congress was not intending specifically to get those, but enacted a broader statute. So we wouldn't have debates about this. Look at the debate that we're having in this case. I think everyone can agree that the banks are just like the banks in Mays. They're second-line victims. There is an order to the bank. It's a check. A check is simply an order to the bank to pay a specified sum to the bank. Well, in Justice Kagan's hypothetical, the bank didn't have to refund the money. And we could sit around here all day with examples, but suppose you have a contractor on a cost plus fixed fee and he inflates the cost. This would be, to the owner, this would be a violation of the statute. This is a sweeping interpretation you're offering us. We think that that is the interpretation reflected in the text for the following reason. Although it doesn't fall within the core of what Congress was trying to protect, it avoids the problems, the kind of debate we're having here about situations that do fall within the core. Because remember, now we're talking about Petitioner says, well, you know, it wasn't sufficiently targeted. He didn't really victimize or harm the bank. Congress is trying to get away from that type of inquiry. And they said, look, if the scheme has the intent of obtaining property either owned by or in the custody or control of the bank, so that means it can either be controlled by the bank, its own property or custody property it's holding, or it's in the custody or control of others, but it's owned by the bank, very broad coverage, and you use you try to obtain this, that property by means of false or fraudulent pretenses, we avoid this kind of discussion about were you sufficiently targeting, do you really intend to just. Scalia, but you extend Federal law enormously into the kind of stuff that we've usually left to the States. I'm not sure that that's actually true. It's a very strange Federalism argument that Petitioner is making. Petitioner is saying, my conduct is Federally, a Federal crime. It's a Federal crime under this. It could be a Federal crime under that. It's just not a Federal crime under the bank fraud statute. That is a very strange Federalism argument, because Congress has already put its hands all over the subject. And what Congress was trying to do here was to respond to cases like May's by enacting a broad statute. Congress would have to do that. Roberts, the court may or may not remember. You're reading the word ''obtained'' to mean whoever knowingly executes a scheme or artifice, to obtain, it doesn't mean for him to obtain. It means for anybody to obtain. That's how you read it. That's correct. And that has been and that has been pretty much the universal... The understanding of ''obtained'' in this Court Okay. Okay. You don't have to argue that yet. I just want to know now how it works. Fine, fine, fine, fine, then is the way you see the statute. That's right. That Mr. Crook goes to Mr. Smith and says, ''Dear Mr. Smith, here is my check for $50,000,'' knowing he only has $3 in his account. All right. Now, case one is Mr. Smith, not too bright, gives him $500. Now, he might, Mr. Crook, think that Smith will then go and present the check to the bank and maybe get some money. In that case, he has violated this, in your view, because Mr. Smith obtained money from the bank and that was part of Mr. Crook's idea as what was likely to happen whether he wanted it to or not. Partially correct. All right. There is also the Justice Scalia's point, which is important, and that is to me, and that is that there also is the case when Mr. Crook doesn't know how the banking system works at all, and he has no idea that the bank will, in fact, give any money or whether it will give any money. Those are the two cases. I have at least two responses. The first is. It doesn't need a response. All I want is an explanation. Well, two explanations. Give an explanation rather than a response. I will give an explanation that will be connected to the question. The explanation is, I think, twofold. First, as the Court explained in Nader, the gravamen of this statute, just like the gravamen of the mail fraud or the wire fraud, is not the particular acts or that the particular acts are done well or have any likelihood of success. It is the scheme. And so, therefore, questions about reliance, the bank doesn't have to believe it or rely on it, damages that result, don't have to rely. This is a scheme. It is criminalizing the scheme to obtain. Sotomayor, So what do you do with the case, the second part of the hypothetical that Justice Breyer didn't repeat, where the person knows the bank is not going to pay a cent because there's no money in this account? And so there is no part of the scheme to obtain funds from the bank because they know the bank won't pay it. Well, they may suspect that the bank may not pay it. Banks sometimes, in fact, do pay checks on insufficient funds. Banks have only 24 hours after receipt of a check to dishonor it or not. And if they don't, then they're stuck in the UCC and have to bring lawsuits. I mean, the practical impact of this type of situation is significant. About a billion dollars a year. Breyer, what's the answer to Justice Sotomayor's question? Well, it depends on the Mr. Crook is not too bright, and Mr. Crook doesn't even know what a bank is. And all he knows is he can get $500 from this other not genius Mr. Smith. And so he does not care about banks. He doesn't know how they work. He has no idea if they pay or don't pay. What's the result? I think it would be very hard for the government to prove that your inept bank thief had a scheme to obtain money or property from the bank. But the government might be able to prove it circumstantially because, just as Justice Alito explained, you rarely have insight into the heart of hearts of criminals. You need to have circumstantial evidence. What Federal statute criminalizes a con game? A con game. A con game. What Federal statute? 513 criminalizes altering checks. But what other Federal statute makes it a Federal crime to engage in a con game? Without a check. Well, I'm not sure exactly what you mean by a con game, but there are plenty of Federal statutes that do that. I'm going to paint your house and takes a check for $100 and doesn't paint the house. Well, the answer is that Congress has addressed false statements, schemes to defraud, schemes to obtain money or property through all kinds of various statutes, mail fraud, wire fraud, false statements, bank fraud. It just has done so in particular areas where there is a Federal interest implicated. And it actually, those areas are quite sweeping. I mean, bank fraud and money fraud. That would be one of them, if you accept a check, right? If you promise to paint the house, you have no intention of doing it, so it's fraud and you accept a check. And that's it. You're under the statute, right? The government would have to prove that the scheme was intended to obtain money or property from the bank if that was shown. And it was shown that that was the case. And what does that mean, Mr. Yang? I mean, you could mean that the defendant intends that the money come from the bank, or you could mean that the defendant intends to obtain money, which he knows may or is reasonably likely to or is foreseeable to come from the bank. Which do you mean? I think we kind of mean both, and let me explain why. As Justice Alito, I think, has kind of alluded to, as a practical matter, the way you prove these cases is you prove that a defendant generally intends the natural consequences of his or her acts. And so if, for instance, you have a case like this where you have a fraudulent check which is directed to a bank, it says, Bank, pay the payee this sum of money, that the defendant is going to intend, when they tender that to the merchant, that that check is going to be sent to the bank and that the bank is going to, you know, has a reasonable chance of paying. Well, I think this does go back to Justice Alito's question, because the person can say, the defendant here could have said, I really don't care whether the bank ends up paying Target. I don't know whether the bank will end up paying Target. I don't know how these things work and how often the bank honors it and how often the bank doesn't honor it. And I really could not care less as long as I get my money from Target. Right. But in our legal system, I don't think it's the – let me give you another example. Let's say you want to kill somebody and you put a car – bomb in their car, right? And there are two people in the car. You see the target go in, you see someone else go in, and you detonate the bomb. You can't say, I was really indifferent about the second person. Kagan.           Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan.        Kagan. Kagan. Now, I suspect, Mr. Chauvin, it's because it's quite likely that the bank's not going to honor this. You think, nonetheless, that that person has intended to obtain bank property? Has? Yes. By the virtue of the scheme, the scheme used— Wait. I thought you said earlier, and I was going to ask you about that, that he does not have to personally receive bank property. Right. He just intends that bank property be given to somebody— To be transferred per his direction. Yes. Yes. That's exactly right. And you've been slipping back into the hypotheticals where the bank is going to bear the loss. But your position also covers instances where the bank does not bear any loss. The fraudulent contractor, Justice Kagan's hypothetical about the phony painting, the bank is not going to give that money back. And for good reason, for multiple reasons. One, this is prohibiting the scheme, not a good scheme, not a completed scheme, not an effective scheme. And— So you have Federalized every fraudulent transaction in the economy whenever a check is involved. Not whenever a check is involved. The government would still have to show that the scheme itself was intended to obtain money or property from the bank, and did so by— Well, I mean, I can think about it tonight, but I'd like an example of a check where the money doesn't come from a bank. Well, in the check context, I think there is none. I mean, what you have, if you're obtaining that check in order to get the money from or property from the bank, I think it would fall within. And again, we understand this is a broad reading. We own up to that. Could I just make sure I understand your answer to my question? Suppose that this defendant did not return the merchandise for cash. In other words, suppose he just wanted an Xbox and he did the exact same thing. So he never himself wanted cash and, again, could not have cared at all whether the bank was going to give the vendor cash. Still, you would say that person intended to obtain bank property. By virtue — yes, we would say that by virtue of the scheme. Remember, he's not just walking in saying, you know, I'll pay you tomorrow if you give me a hamburger today. The — he's going in with a check. A check is — everyone knows what a check is. It is in order to a bank to pay money. He's giving it to the bank or to the merchant. Scalia. But he's not obtaining the bank's money. You read to obtain, a scheme or artifice to obtain. You read that for anybody to obtain. I would read it to mean for him to obtain. But that's not how you read it. And you say that's — everybody reads it the way you do? This Court has long recognized that the word obtain not only means that you obtain it for yourself, but you can obtain something by directing the transfer of property to someone else. And that's exactly what a check does. You are directing the check to someone else. Ginsburg. Mr. Yang, before you finish, Mr. Russell pointed out, and I think Justice Sotomayor, that there is Section 513. It deals with — expressly with altered checks, but the penalty is much, much less. Is everything that is covered by 513 covered by 1344 too? Yang, well, I think the answer is that has not been decided. And let me just explain it in a few ways. One, Section 513 deals with securities, which includes checks of States or organizations, and then it defines organizations. There is a substantial question whether that applies to personal checks. One court of appeals has said it has. The Department of Justice's criminal resource manual says it does not apply to personal checks. So there is a real question about whether Section 513 would apply. But even if it were to apply, it applies to protect the integrity of certain writings. It is a different provision than a scheme-based provision like Section 1344, which more broadly prohibits types of schemes to obtain money or property from banks. Kennedy, is it true that there is a 2-year mandatory minimum? Yang, not for bank fraud. There is aggravated identity theft for which— Kennedy, under this statute, is there a mandatory minimum? Yang, no. This statute, the bank fraud statute, has a punishment of up to 30 years to reflect that frauds come in various sizes. It's not a mandatory minimum. It's just a maximum. And in this case, the defendant actually got 1 year for this bank fraud. He got a stacked sentence of 2 years for identity theft, which is separate from this provision. Sotomayor, Mr. Yang, if we are concerned about federalizing every case involving a check, okay, your brief does give us an alternative. Yes. My problem is I can't locate that alternative in the language of the statute. Well, I think— So are you asking us just to make it up, or if not, how do we reach it? We're not asking you actually to make that interpretation. It would be if the Court concludes that our first interpretation is somehow problematic. All right. And we think that that is a superior reading than Petitioner's for the following reason. Congress addressed— No, no, no. Please answer how do we get to your reading from the text of the statute. I will. The way you get there is that Congress in Clause 2, again, remember, specifies you have to have intent to obtain money or property from a bank by means of false or fraudulent pretenses, representations, or promises. It does leave silent to whom those false or fraudulent representations must be made. Now, if you look at the legislative history, it's very clear that Congress was at least concerned with situations like Mays where a bank would be a victim of a fraud. And those in Mays involved a situation precisely like what we have here, where the reason that the bank is a secondary victim is because that false signature, the false charge slip— So far I'm with you, but you haven't answered my question. But the way it is in that context, the reason that the bank is the victim of the scheme is because the fraudulent method is actually transferred to the bank as an inherent part of the scheme itself. And so— I agree that that interpretation substantially narrows the statute because it's the altered check the bank is going to be certainly at risk of loss. Kennedy, if we were to agree with that suggestion, and we're inclined to read the statute that way, is there a case that you can cite to us that says we have a duty to save poorly drawn statutes by a sensible amendment? No. No, I don't think we— I mean, what case do you want me to cite if I adopt your alternate, your fallback position? I don't think we are relying on the idea that the court would be doing is construing the statute in light of presumably some good reason to reject what we think is what the statute normally says. Why don't you try the rule of lenity? Why don't you try the rule of lenity? We think that the rule of lenity doesn't apply for the reasons that we set on our broader argument. If the Court rejects that, that might be a reason. But again, it's construing the term means. Does the rule of lenity provide a precedent for us to adopt the narrowing interpretation? Your fallback position? I think just in any context where you might have constitutional doubt, the Court sometimes, as you know, construes a statute in a way that it might not otherwise do, and here what we're giving you the hook for, this, is that the means specified leaves open to whom that false or fraudulent communication must be directed. You could read in light of the history and in light of what Congress's main intent was here to read the statute as saying, ah, Congress actually in Clause 2 was concerned with a specific type of means, that is, the means that are directed to the bank. And the reason I think this is far superior than what Petitioner suggests is because we are at least construing silence in the statute. Congress specifically addressed intent already in Clause 1, that is, intent to defraud a bank, which is what Petitioner says Clause 2 does. But Clause 2 says there is intent to obtain money or property from the bank. There is no reason to run over Congress's choice about what types of schemes have to be intended in order to achieve this result. Again, this is our fallback position. Scalia. If we adopt your fallback position, does 2 do anything that 1 doesn't do? I mean, if you've made your false or fraudulent representations to the bank, surely you intend to defraud. Well, both clauses actually under our fallback or our main position cover things that the others will not. And I'll give you two examples. On Clause 1, Clause 1 covers what's called bare check-kiting, where you write a check, it has insufficient funds, you withdraw the money, then you write another check to cover it and another check and you play the float. Nine courts of appeals have addressed this question. All of them have concluded that it falls under Clause 1. Six of them have concluded it doesn't fall under Clause 2. And the additional three courts of appeals that have criminal jurisdiction in either unpublished or in dictum have suggested agreement. So it's pretty well established check-kiting falls under 1, not 2. On with respect to 2, it covers schemes like this, where you can argue maybe you didn't intend to defraud the bank itself, but you used false or fraudulent means that would be inherently due to the bank because of the nature of the means themselves. Here, where you direct a check, it's a financial instrument. It is ordering a bank to pay money. It goes to the bank, and one normally intends the natural consequences of their acts. It goes to the bank in the ordinary course. Sotomayor, which part of the statute are you interpreting with this limiting principle, the obtained part? By means of. By means of. By means of the false or fraudulent pretenses, and it's understanding those false or fraudulent pretenses to be ones which are directed to the bank as an inherent consequence of the scheme itself. Mr. Yang, your first order argument, which is, you know, the natural way one would read a statute that says 1 or 2, is to interpret it as meaning two different things. But that requires us to read it differently from the way we read the exact same words, without the numbers, but the exact same words in McNally. And we know that Congress wanted the bank fraud statute to mirror the mail and wire fraud statute. So we end up with this, you know, if we go with your friend over there, we read a statute in a way we wouldn't normally. But if we go with you, we have to read these two statutes that say the same thing and that we know Congress meant to say the same thing differently. Right. And I think that there are very sound reasons for doing that, and I'll explain why. First, when you look at the statute, Section 1344, this is on page 5A, and the mail fraud statute is 1341 on 2A. They're quite different. I mean, even when we just look at the statutory structure alone, Congress broke these clauses up, put them on different lines, numbered them, indented them equally, one would not naturally say you have the option of one, option A, or two, option B. Kagan.              Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And we have a difference in meaning, don't we? No. No. Congress modeled. It's certainly true that Congress modeled the bank fraud statute on the mail fraud statute, but that doesn't mean Congress wanted the two statutes to be coterminous. In fact, Congress not only expressed its understanding that these were disjunctive for the various structural reasons which I think are inescapable from the text, but also Congress modified the text itself. Congress didn't simply say a scheme to defraud. It requires a scheme to defraud a financial institution. Congress did not say a scheme to obtain monetary property. It specified that it's not only property of the bank, owned by the bank, it is property under the bank's custody that the bank doesn't own, and property that the bank owns, but it's not even under its custody or control. It's under the custody or control of others. This is a different statute, of course, modeled on the mail fraud statute, but it's different. And Congress, I don't think in 1984, could have been more clear about its intent to make these two provisions, that is, the intent to defraud and the intent to obtain provisions, distinct based on the choices that it made in text. It's just, I think, impossible to read the text and come away with the conclusion that in 1984 what Congress intended, regardless of what happened in the mail fraud statute in 1987, that Congress intended that or, notwithstanding the only reading of or in this context that makes any textual sense, it's not even defended as a textual argument on the other side, that Congress meant that or in that structure to mean anything but or, that is, a disjunctive with two separate clauses having independent meaning. And, in fact, it would be anomalous to do so because section 2 covers, for instance, bank-owned property that's not under the custody or control of the bank. So why would you intend to defraud the bank when you're trying to really get it from the custodian of the bank's property? The idea would be that the means obtained, at the very least, would probably be directed to the custodian of the property, not which is not always the bank under Clause 2. Ginsburg. Is the government still taking the position that it took in the district court, that 1344.1 also covers this case? Well, we disagree with the court of appeals precedent which says you need a reasonable risk of loss under Clause 1. But the government acquiesced to the district court's narrowing of this to Clause 2. Well, along those lines, if we were to agree that under sub 2 it was necessary to show an intent to defraud the bank, what would the government have to prove in an altered check case? Well, I guess you'd have to prove. You'd have to prove under sub 1 if you can, if this case could properly be prosecuted under sub 1. Well, you'd have to show that the scheme was actually intended to obtain, to deceive the bank, as well as obtain its property, as opposed to a, and that intent difference can be significant in cases. What we'll have to show here is that the scheme is not significant. Well, how can that intent difference be significant? I mean, I would have thought that you would have said the same proof that goes to whether you intend to obtain bank property, even though you're presenting this check only to a third party and the check may or may not be honored by the bank, that you could say the exact same thing about whether you intend to defraud the bank. We certainly would probably rely on the same types of evidence. We would then have the additional burden of having to show that the intent was to deceive the bank specifically. Alito, what would this, what I'm getting at is, would this require delving into the defendant's knowledge of the legal relationship between the merchant here and the bank? I think it inevitably is going to come to that, and you're going to throw to juries these questions of like, you know, despite the fact that the defendant has used a check, did the defendant really know what a check was, or did the defendant, what is the check? But why isn't that the same under the intent to obtain bank property, where you also, the defendant might say, no, I really didn't intend to obtain property because I didn't really know whether the bank would honor the check, and in fact, I thought it wouldn't? Well, the scheme would be to obtain. You don't have to necessarily show that the specific means that you were using were intended to deceive the bank, because that requires a lot more inquiry. But even on the obtain property wing, it's obtain property from the bank, isn't  Not obtain property from the bank. It is obtain property that owns the bank. Well, in the custody of the bank. It doesn't have to be in the custody of the bank. It can be bank-owned property in the custody of others. So, for instance, banks have a lot of assets. For instance, they can foreclose on houses and such. In those contexts, you might have someone who is scheming to obtain bank property by directing their fraud to a third party to whom the bank has entrusted their assets. Kagan. Kagan. But in a case like this, wouldn't the difficulties of proof be the same? The person, whether you charge somebody with trying to defraud the bank or with trying to obtain property owned by or in the custody of the bank, if Justice Alito was right as to the one, that all these questions about the relationship between a bank and a retailer are going to come in, isn't he also right as to the other? I'm not quite ‑‑ I don't think that's quite right, and the reason is that whenever you have to show an additional intent requirement, it ups the ante. Just like in homicide, you have various gradations of a homicide, including a murder. When you have an additional ‑‑ Alito, that doesn't the answer depend on from whom the ‑‑ for whom the money either owned or under in the custody of the bank has to be obtained. If it doesn't have to be obtained by the defendant, then it wouldn't seem to me that there would be much of a question, because even if the only thing that the defendant obtains from the merchant is an X‑box, if the check is honored, it is going to be obtained by the merchant. Somebody is going to be obtaining money from the bank if the check is ultimately honored. May I just ‑‑ I would just qualify that by saying that the defendant is obtaining the money. It's obtaining it through the check to be paid to the merchant. That's the ultimate ‑‑ expectation that the check will be honored, don't you? It has to ‑‑ the scheme has to contemplate that. Exactly. And if it's a scheme that's making alterations that no reasonable person would expect the bank to honor, it seems to me you're out of luck. Well, I don't ‑‑ if I might respond, Mr. Chief Justice, the ‑‑ I don't think that actually plays out in fact. Banks suffer about a billion dollars in check fraud a year. There are $10 billion that banks put into check fraud prevention. There are so many checks that fly through, including the checks here. If you look at the checks here, the ones that he got caught for, not the ones that he might have washed and dried, weren't artfully done. But some still go through. And the transaction costs that it imposes on the financial system is something that Congress could have been concerned with. In fact, we think it was. Thank you, counsel. Five minutes, Mr. Russell. Thank you. I think Congress was concerned about the risks to banks of altered checks, but it dealt with that in Section 513, not Section 1344. So what's your ‑‑ The answer wasn't ‑‑ the scope of 513 wasn't clear. I don't think that that's correct. I mean, we cited a case in our brief in which the government actually succeeded in prosecuting someone for an altered check under Section 513. I don't understand the argument that checks aren't encompassed within 513. We've reproduced the language at 10a of the blue brief. And what it says is that it criminalizes the use of a forged security. And it defines forged to mean altered. It defines security to mean check. And then it has to be a forged security of an organization. And it defines organization to mean any legal entity other than a government, established or organized for any purpose and includes any corporation, company, association, firm, et cetera. I just don't understand what the argument is that Section 513 doesn't cover some species of altered checks. But at the very least, if you thought that Congress must have intended to federally criminalize use of all altered checks, it's an easier interpretation to say that 513 covers it than the bank fraud statute. The government's argument here today makes utterly clear how broad the federal bank fraud statute will be if you adopt their interpretation. It encompasses the fake Renoir example and all of the ones in our briefs. And it includes every not sufficient funds case and the government acknowledges  Sotomayor, could you please tell me why, what your objections are to the by means of limiting principle the government gives as an alternative? So there's several objections. One is the one that you raised. There's no basis for it in the text. It is a limitation on what the statute says, any false representation. And they say no, only those false representations that would foreseeably go to a bank and might fool it into paying a check. Second, it doesn't do any useful work, because all it does is the only difference between their fallback position and intent to defraud a bank is two things. One is that it permits them to bring cases in these third-party altered check cases. And we've argued we don't think that those fall under the statute anyway. But even if you think that they do, the much easier thing to say is they fall under the statute, intent to require, no, defraud a bank is required, but the use of the third-party altered check is sufficient evidence. Kennedy, I think there's a lot of work because it takes out of the equation schemes to defraud where the bank is not going to be liable. Right. I'm saying it doesn't do any work that intent to defraud a bank doesn't already do. So if you're choosing between our test and their test, both tests allow prosecutions of paradigmatic fraud cases. Both cases, both tests eliminate the Renoir example. But their test permits the only difference, practical difference, is their case facilitates prosecution in these third-party cases that we don't think are covered by the statute anyway. But even if there are, you don't have to adopt this extratextual interpretation. Sotomayor, I don't understand how, if the fault is made to Target, who gives the person the DVD off the shelf, how you prove that that's an intent to defraud the bank as opposed to defraud Target. So what's the charge you give to the jury to get to that? I think the principal is the charge that they want to get. You say that they have to show that the defendant intended to deceive a bank. And the government can argue, and the government has successfully argued in many cases, that use of an altered check shows that the defendant intended to deceive a bank. And the government raised — you know, the government never likes to have to prove intent. But the government raises these theoretical difficulties in proving intent, but it hasn't shown that this actually ever arises. In fact, the government routinely convicts people in circumstances like this case, even in circuits where intent to defraud a bank is required. It's just they didn't try to do that here because they didn't ask the jury to make that finding. In addition, the difficulty of their test is it's just plain strange. They say you should adopt their test because Congress didn't care about intent to defraud a bank. Then they adopt a rule that looks very much like the kind of rule you would adopt if you thought Congress cared about intent to defraud a bank. It's simply substituting some circumstantial evidence that one could argue to a jury shows intent to defraud a bank and saying that's all the government has to prove. That's a theory. Alito, your textual hierarchy is that the representation has to be made to the bank, right? That's the only way you can get this within the statute. That's correct. But that's different from an intent to defraud the bank, isn't it? I think, well, that's the first half. So there's two pieces, intent to deceive the bank, intent to obtain bank property. We say that you can read the statute to require intent to deceive the bank because there's a statutory silence, and then the government has to prove intent to obtain bank property. That's easily proven when the check is directly presented to a bank. We don't think it can be proven in a case like this because our client intended to obtain Target's property, not the bank's. Well, where's the textual silence about intent? Where do you get intent to deceive the bank into this? I think that's what we get from this Court's decision, for example, in McNally, where it says that. Where do you get it from the text? I understand the argument. It's a very credible argument. It doesn't say to whom the representations have to be made. So you put in to the bank. Right. I don't see how you get from there to defrauding the bank. So if you read it to mean that you have to direct the false statement to the bank, that is the first half of what McNally said in intent to deceive the bank, or intent to defraud a bank, is you have to intend to deceive the bank. And the second half is you have to get at, intend the deceit to obtain bank property, which is on the face of Subsection 2. Thank you, counsel. The case is submitted.